## C. AULTMAN & Co. v. McFALLON.

*(Circuit Court, E. D. Michigan. May, 1882.)*

**1. CONTRACT—OBLIGATIONS—GUARANTY.**

In an action for the price of a steam-engine and threshing-machine, represented to be equal to any of its class, to be taken on trial and worked, and if it worked according to its guaranty defendant was to pay for the same by three promissory notes executed for its price, defendant is not bound to accept the machine if either the engine or separator fails to do what is promised, as the contract is an entirety.

**2. SAME—ACCEPTANCE.**

Where defendant notified the plaintiff that the separator was not working well, and plaintiff continued his efforts to put it in repair until about the middle of August, it was the duty of defendant to make up his mind whether he would take the machine or not, and to notify the plaintiff of his refusal to accept it, failing in which he would be liable for its value; but if he kept the machine at the solicitation of the plaintiff, for the reason that plaintiff's trade would be injured by the return of the machine, his retention thereof would not be such an acceptance as would render him liable for the price.

**3. SAME—WHAT NOT AN ACCEPTANCE.**

Where defendant delivered the machine to a third party as his machine, intending such third party to use it as his engine, he is bound to pay for the whole thing; but if he merely allowed such third party to take it, with notice from plaintiff that it was plaintiff's engine, and that such disposition was made on plaintiff's solicitation, it would not constitute an acceptance by defendant.

*Gould & Pease,* (with *Conely & Lucking,*) for plaintiff.

*Gibson, Parkinson & Ashley,* for defendant.

BROWN, D. J., *(charging jury.)* This is an action for the price of a steam-engine and threshing-machine sold by the plaintiff to the defendant. It becomes my duty to instruct you with regard to this contract, and the legal obligations arising from it.

Except in the matter of price I believe there is little or no conflict as to the terms of the contract. Mr. Swann says that the price was to be $1,250, less $40 freight, which the defendant paid, making the amount now due $1,210. The defendant says that he was to give $1,225 for the machine, from which deducting the $40 would leave

$1,185 as the amount due, with interest, in case your verdict should be for the plaintiff. Both of these parties—and if I am mistaken in my remembrance of any of this testimony I desire to be corrected—both of these parties agree that Mr. Swann represented the machine should be equal to any of its class; that it should do good work; and that the defendant should take it upon trial, and should purchase it if it did as well as it was guarantied to do. One of them says, I believe, that the understanding was it should do as good work as any machine in the market; but, as there was no comparison of this with any other particular machine, I think that warranty would be satisfied if the machine or "the rig," as it is called, did good work, or as good work as any machines which farmers are in the habit of buying. I do not understand there is any particular disagreement between Mr. Swann and the defendant as to the terms of the sale. It was agreed, Mr. Swann admits, that he should take it upon trial, and it was agreed between them that if it worked according to its guaranty the defendant would execute three promissory notes for its price. These notes never have been executed.

Now, gentlemen, the first question for your consideration—leaving out this $25, which you must settle between yourselves, and the evidence seems to be equally balanced with regard to that—I say the first serious question connected with this case is whether the machine worked as it was guarantied to work. If it did, then the defendant is bound to pay for it, irrespective of any other consideration. If the machine was such a machine as Mr. Swann represented it to be, then all the rest of this testimony is of no avail, and your verdict should be for the plaintiff for the price of the machine, less, perhaps, a deduction which I will speak of hereafter. And in this connection I charge you, as requested by defendant, that the defendant was not bound to accept the machine if either the engine or the separator failed to do what was promised by Swann, as the contract was an entirety; that is, the purchase was of the two,—of the engine and of the separator together,—and if either of them did bad work the defendant was at liberty to return both, but he could not return one and keep the other. Now, gentlemen, did this engine and separator do good work? The evidence upon that point has been very ably and fairly collated by the counsel who closed the case, and it is a question for you to consider whether this machine was what it was represented to be.

And first, as to the separator, there is a conflict of testimony. The fault that was found with the separator seems to have been that

it wasted more grain than it ought to have done. That these thresh-ing-machines will all waste a little grain seems to be conceded; the question is whether this separator wasted more grain than a sepa-rator ought to. The evidence upon the part of the defendant tends to show that it wasted more grain than any other separator his wit-nesses had ever seen, and that it continued to do so after efforts were made to repair it. On the other hand, the evidence upon the part of the plaintiff tends to show that the separator wasted no more grain than all separators do, and that when it did waste it was because the separator was over-fed—fed too rapidly. It would naturally follow that if the separator was fed too rapidly it would waste grain; but the question for you is whether, if fed in the ordinary way in which separators were ordinarily fed, it wasted any more grain than good separators and the best separators ordinarily do. If you find that it did not—that after these little repairs were put upon it by Mr. Swann it did good work—then you are at liberty and should find, at least so far as the separator is concerned, that it complied with the warranty. Now, then, with regard to the engine. There does not seem to have been any particular fault found with the engine until the winter set in and it was turned over to work a portable saw-mill, and then it gave out, or at least it is claimed it did not do as good work as a ten-horse engine should have done. Now it is for you to say with regard to that. I am not at liberty to instruct you as to what my own opinion is with regard to it. The only question made about it while it was threshing wheat seems to have been that it required more steam than engines ordinarily did; but, so far as the working is concerned, there seems to have been no definite complaint made until it went into the portable saw-mill, when it is claimed it did not do as good work as a ten-horse engine should have done; that it was discarded, and another eight-horse engine was substituted, and after lying some six or eight weeks in the open air it went into the posses-sion of Mr. Hurd, who used it. Now, then, gentlemen, it is for you to say as to what the condition of this engine was at the time it was received.

As bearing upon the question of the work done by the separator it is competent for you to consider that the defendant did make a very considerable out of it from the time he purchased it until late in November. The evidence tends to show that he made ten or twelve hundred dollars by the use of it. Now, while the fact that he made these profits is not in evidence for the purpose for which it was sought to be introduced, it does tend to show that the separator did

good work. If it had been a notoriously poor separator it is scarcely possible it would have found as much employment as it did that season.

Now, gentlemen, supposing this property did not fill the warranty, there is a further question for you to consider in connection with that. If it did not operate as it was guarantied to do, it was the duty of the defendant, within a reasonable time after the plaintiff had ceased his efforts to repair it, to give the plaintiff notice to take it away. It was not necessary that he should carry it back to him, but he should, within a reasonable time after he had given it a fair trial, and after Mr. Swann had put it in such repair as he did, it was his duty, I say, to give Mr. Swann or the local agent in Jackson distinct notice that he would not receive it, and to take it away, or at least that he would not receive it with the implied permission to take it away. Now, gentlemen, did he do this? In this connection I will read some requests, because a large part of the evidence in this case bears upon this question. I charge you, as requested by the defendant in his third request, that—

"Defendant had the right to test the machine before accepting it, and if he did test it and found it defective, and notified the plaintiff's agent, Swann, that he did not want it, and that he did not return it because he was requested not to by Swann, and it would injure the business of plaintiff, then there was no such acceptance of the machine as would render the defendant liable."

Again:

"If the plaintiff or its agents, Swann or Brown, in behalf of the plaintiff, assumed control and direction of the machine, and endeavored to sell or rent it after notice that the defendant refused to receive it, then the plaintiff is estopped from insisting on defendant's liability.

"If the defendant declined to take the machine, and offered to return it, but was induced not to by Swann, upon the promise of the latter to furnish another or cure the defects in the one furnished, then defendant cannot be held liable for keeping or using the machine until plaintiff had performed its part of the agreement.

"If the plaintiff promised that while the machine was being tested by defendant he would make good any defects, and such defects existed, of which plaintiff or its agent was notified, but which were not remedied, then defendant is not liable unless with a knowledge of such defects he accepted or agreed to pay for the machine."

The question of what profits the defendant realized from the use of the machine is not to be considered by the jury, except as I have already stated. The parties must stand upon their contract rights. I mean by that, the fact that the defendant used the machine and

made profits from it would not make him liable for the machine. As I said before, however, the fact that he made profits by the use of the machine is competent to show that the machine did good work. I think it is also competent evidence to show that he intended to keep the machine. The fact that he continued to use it up to the latter part of November, and that he continuously made profits upon it, is evidence tending to show that he all the time intended to keep the machine. I charge you also, as requested by the plaintiff, "that if defendant continued to use the engine after he knew of the defects, if any, then he is bound to keep the whole 'rig;'" that is, unless he kept it at the request of Swann, of which there seems to be some evidence. "The vendee," that is, the defendant, "was bound to move promptly to rescind on discovering that the thing sold did not correspond with the warranty, else he affirms the sale." But "the vendee is bound, upon determining not to keep the property, to give the vendor distinct and positive notice of his intention, and to offer to return the property; and, in case the vendor refuses to accept it back, the vendee must not use it further or exercise any rights of ownership over it. He must not do anything with it inconsistent with the rights of the vendor." "In this case, if the jury find that McFallon consented to the taking of the engine by Jesse Hurd, to be used by Hurd, then the defendant thereby made the engine and separator his own." "That is, if you find he delivered it over to Hurd as his engine, with permission to Hurd to use it, he would be liable in this case."

And now that I have given the requests in the language dictated by counsel, I will proceed to give in my own language what I consider the duty of the defendant in this particular.

The defendant notified Swann that the separator was not working well. Mr. Swann went there, and it seems continued his effort to put it in repair until about the middle of August. Now at that time, or within a reasonable time thereafter,—and it would not need but a few days,—it was the duty of the defendant to make up his mind whether he would take the machine or not; and if you find that he used it along during the season without any offer to return it, then he is bound to pay for it, unless you find that he kept it at the request of Swann. There is some evidence tending to show that Swann requested him to keep it rather than to have it returned to him, as it would injure his trade. Now he would not be liable for keeping it under those circumstances. If you find that he kept it under the solicitations of Swann, and the representations that it would injure his trade, then he would not be liable by reason of his

keeping it; but if you should find that he did not give distinct notice to Swann that he would not take the property, and that he continued to use it during the season, and did not give Swann notice to take it away, then he is bound to pay for it. But, as I said before, if he kept it merely to gratify Swann, and to save the plaintiff from the damage of having one of his machines thrown out, then he would not be liable by reason of keeping it, and it would then come back to the question first discussed, as to whether it was a machine that corresponded to the warranty.

Now, with regard to his delivering the engine to Hurd, if you find, as I said before, that he delivered it to Hurd as his engine, intending Hurd should use it as his engine, then he is bound to pay for the whole thing; but if he merely allowed Hurd to take it, and Hurd had been notified by Swann that it was his engine, or by any agent of the plaintiff that it was the plaintiff's engine, and it was upon plaintiff's solicitation rather than at the defendant's that such a disposition was made of it, then the fact that the defendant delivered it to Hurd to be used would not constitute an acceptance.

I believe, gentlemen, I have covered all the material points in this case. Gentlemen of the jury, the case is in your hands; you will retire to consider of your verdict.

*Mr. Gibson.* May I ask your honor to suggest one thing? Your honor said that the question of profits might be used as evidence for the purpose of showing that defendant intended to keep the machine. I ask your honor to qualify that, if you feel so disposed, by saying that would not be so provided Swann had desired him to keep it.

*Court.* That is so.

*A Juror.* May I ask one question? If, after Swann requested him to keep the machine and not to return it, because it would injure his business, would his using the machine have any effect upon that?

*Court.* No; I do not think it would. If you should find that Swann told him to keep it, and he used it, and you find that he used it, not intending to keep it at all, I do not think that would have the effect of constituting an acceptance.

### EXCEPTIONS.

Plaintiff's counsel excepts to the refusal of the court to give each of plaintiff's requests that were refused, and to the modification of each request of plaintiff given in a modified form by the court. Also to the giving of the requests of the defendant which were given,

and to such as were given in a modified form. To the charge of the court wherein he says if McFallon consented to the delivery to Hurd, and delivered it as his engine, with permission to use it, to the language of the court, as there used in that connection, we except. Also to what the court said in using the language commencing, "But if he merely allowed Hurd to take it," etc. Also to the language of the court, "That if the jury find that Brown, or any other agent of the plaintiff, notified him, (Hurd,) and that Hurd took it as the agent of the plaintiff," etc. "That if Hurd took it at the solicitation of plaintiff or any of his agents," etc., to the charge in that connection. To the language of the court in charging the jury with reference to the plaintiff requesting the defendant to keep the machine, and that there was no qualification as to the time he should keep it, or as to his meaning of "during the season."

Verdict for plaintiff.